*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TERRY BATTLE,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil Action No. 13-2024 (JLL)

**OPINION**

**LINARES**, District Judge:

Presently before the Court are the post-judgment motions of Terry Battle ("Petitioner") to alter or amend the Court's order denying his motion to vacate, set aside, or correct his sentence. (ECF No. 13, 15). Respondent, United States of America ("Respondent"), filed responses (ECF No. 18, 21), to which Petitioner replied. (ECF No. 20, 22). For the following reasons, the Court will grant in part and deny in part Petitioner's Rule 59(e) motion and will deny Petitioner's Rule 60(b) motion. The Court will also order an evidentiary hearing solely as to Petitioner's claim that he received ineffective assistance of counsel in so much as counsel failed to advise him with regards to the plea agreement offered by the Government.

## I. BACKGROUND

As the background facts supporting Petitioner's conviction were previously summarized in this Court's opinion as to Petitioner's § 2255 motion, only a brief recitation of the facts is necessary for the resolution of Petitioner's current post-judgment motions. As laid out in this Court's previous opinion,

> [o]n or about August 22, 2007, Jose N. Orozco and an unindicted individual known as "Julio" supplied approximately six kilograms of cocaine to Petitioner for sale. Petitioner then provided the cocaine to Larry McCargo to sell in Newark, New Jersey. McCargo was arrested with the cocaine in Newark on August 22, 2007. McCargo immediately began cooperating with law enforcement, which led to Petitioner's arrest. Petitioner also agreed to cooperate, and engaged in a number of consensually-monitored telephone calls with Orozco and Julio. During the calls, Petitioner told Orozco and Julio that he needed to return the cocaine. He also arranged with Orozco and Julio for Orozco to come to New Jersey from Delaware to retrieve the cocaine. When Orozco arrived in New Jersey on August 23, 2007 to retrieve the cocaine from Petitioner, he was arrested.
>
> On August 24, 2007, Petitioner and Orozco were charged by Complaint with conspiring to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846.

(ECF No. 10 at 1-2).

Although Petitioner was originally represented by the Federal Public Defender's office, he ultimately hired the Law Offices of Paul W. Bergrin to represent him. (*United States v. Battle*, Criminal Action No. 07-900 at ECF No. 10). Attorney Zilka Saunders, who at the time was an employee of those law offices, therefore entered her appearance as Petitioner's attorney on September 4, 2007.[1] (*Id.*). On that same day, the Government sent a letter to the assigned magistrate judge raising the possibility of a conflict of interest which might exist between Petitioner and Paul Bergrin's office as a result of certain criminal indictments which had arisen against Bergrin in New York. (*See* Document 1 attached to ECF No. 21). Based on this letter,

[1] Although Petitioner asserts that he specifically hired Paul Bergrin himself, and met with Bergrin about his case, the record is devoid of any evidence that Bergrin himself ever acted on Petitioner's behalf before this Court. Only Ms. Saunders appeared on Petitioner's behalf, and the U.S. Attorney's Office denies ever having any contact with Bergrin in regard to Petitioner's case. (*See* ECF No. 18 at 2 n. 1).

the magistrate judge appointed an attorney to advise Petitioner in regards to the potential conflict and, after the attorney had had an opportunity to meet with Petitioner, held a hearing to determine whether Petitioner wished to waive any conflict. (Document 2 attached to ECF No. 21 at 2). During that hearing, appointed counsel detailed his having met and discussed the issue with Petitioner. (*Id.* at 2-4). Appointed counsel stated that Petitioner was aware of the issue prior to meeting with him, and ultimately that Petitioner didn't believe the conflict would affect his relationship with Bergrin or his office. (*Id.* at 4). The magistrate judge then directly questioned Petitioner:

> THE COURT: [Petitioner], do you feel you had enough time to speak with [appointed counsel] about this situation?
>
> [Petitioner]: Yes.
>
> THE COURT: Do you have any questions that you would like to ask the Court or [appointed counsel] that you didn't get a chance to ask?
>
> [Petitioner]: No.
>
> THE COURT: Okay. In light of your discussions with [appointed counsel] do you still want Mr. Bergrin and his office to represent you in this case?
>
> [Petitioner]: Yes.
>
> THE COURT: Okay. What I'm taking from you today as a result of both our discussions the last time we were together and our discussions today is you're waiving any argument or complaint that Mr. Bergrin has a potential conflict of interest. Do you understand you're giving up that argument?
>
> [Petitioner]: Yes.
>
> THE COURT: Okay. Are you doing that of your own free will?
>
> [Petitioner]: Yes.

> THE COURT: And it's your choice to have Mr. Bergrin and nobody's putting any pressure on you. Is that right?
>
> [Petitioner]: Yes.

(*Id.* at 4-5). Appointed counsel was therefore relieved and Petitioner continued with Bergrin's office, by way of Ms. Saunders, as his attorney.

On September 27, 2007, the Government extended a proposed plea agreement to Petitioner. (Document 1 attached to ECF No. 18). Pursuant to the agreement, in exchange for a guilty plea to conspiracy to distribute more than five kilograms of cocaine, the Government would not have pursued any further criminal charges against Petitioner in relation to the drug conspiracy. (*Id.* at 2). In the Agreement, the U.S. Attorney also agreed to an initial Sentencing Guidelines calculation which, without a career offender sentencing enhancement, would have resulted in an offense level of 29 which would equate to a sentence between 151 and 188 months. (*Id.* at 7, ECF No. 10 at 2). Petitioner, however, refused the plea agreement, which was ultimately withdrawn on February 15, 2008. (Withdrawal Letter attached to ECF No. 18 as Exhibit B at 1).

There is some dispute as to what advice counsel provided Petitioner in regards to the proposed plea agreement. Petitioner asserts that counsel "made light" of the plea agreement and did not explain the "significance, seriousness, and consequences of not accepting the Government's plea offer." (ECF No. 3 at 4). Petitioner also asserts that counsel did not discuss the merits of continuing his cooperation with the government in the hopes of a reduced sentence on motion of the Government in relation to the career offender guidelines. (*Id.*). In her certification, however, Petitioner's former counsel states that

> [u]pon receipt of the [plea] offer, I reviewed it and discussed it with [Petitioner]. These discussions took place when I visited [him]

> while he was detained pending trial. While I cannot provide specific dates, [Petitioner] and I had several discussions about the Government's plea offer. During those discussions, I reviewed the advisory guidelines with [Petitioner]. Given [his] significant criminal history, his criminal history category was likely VI, which corresponded to an advisory range of 151 to 188 months imprisonment. I informed [Petitioner] that that advisory guideline range was below the range that would result if [he] proceeded to trial and was found guilty.
>
> . . . In addition to discussing the plea offer, [Petitioner] and I also discussed [his] cooperating with the Government. Prior to my involvement in the case, and prior to the filing of the Complaint, [Petitioner] had cooperated in the Government's investigation. Given his prior cooperation, [Petitioner] and I discussed that if [he] pleaded guilty and cooperated, that the Government may file a motion that could result in [his] receiving a reduced sentence. In light of the Government's evidence in this case, [Petitioner's] prior cooperation, and the opportunity to obtain a reduced sentence, I recommended to [Petitioner] that he accept the Government's plea offer and cooperate with the Government in its investigation. [Petitioner], however, repeatedly rejected this advice and informed me that he wished to proceed to trial.

(Document 5 attached to ECF No. 8 at 3-4).

Prior to trial, Petitioner moved to suppress certain statements and recordings he had made during his period of cooperation with the Government. At that hearing, Petitioner asserted his innocence and that he had "fabricated" his prior inculpatory statements made during this cooperation with the Government. (Suppression Hearing Transcript attached to ECF No. 18 at 110-12). Petitioner also claimed during that hearing that he had not engaged in cocaine transactions with his co-defendants. (*Id.* at 112).

The Court denied Petitioner's suppression motion, and the matter proceeded to trial. Petitioner was found guilty on March 6, 2008. (ECF No. 10 at 2). Petitioner and his co-defendant both filed motions for new trials, which were denied. (*Id.*). Petitioner was ultimately

sentenced on December 8, 2008. During sentencing, Judge Cavanaugh specifically noted that the "Sentencing Guidelines are no longer mandatory but advisory upon the Court." (Sentencing Transcript attached to ECF No. 18 at 18). Based upon the guidelines recommendations made in the PSR[2] and Judge Cavanaugh's evaluation of the §3553(a) factors, Petitioner was sentenced to 360 months' imprisonment. (*Id.* at 18-22). Petitioner and his co-defendant thereafter appealed. The Third Circuit affirmed Petitioner's conviction and sentence on January 4, 2012, in a non-precedential opinion. *See United States v. Orozco*, 456 F. App'x 149, 152 (3d Cir. 2012).

Petitioner filed his initial § 2255 motion on or about March 28, 2013. (ECF No. 1). On June 13, 2013, Judge Cavanaugh, to whom the motion was initially assigned, entered an Order To Answer directing Respondent to file its answer by August 13, 2013. (ECF No. 4). On August 7, 2013, Judge Cavanaugh entered an order extending Respondent's time to reply so that they could properly interview Petitioner's trial counsel after a court ordered limited waiver of Petitioner's attorney-client privilege. (ECF No. 7). Respondents thereafter filed their answer to Petitioner's motion on September 27, 2013, in accord with Judge Cavanaugh's extension order. (ECF No. 8). On March 11, 2014, Petitioner's motion was reassigned to Judge Hochberg. (ECF No. 9). Judge Hochberg thereafter issued an order and opinion denying Petitioner's motion on March 26, 2014. (ECF No. 10, 11). Although Petitioner certifies that he mailed his traverse on March 21, 2014, that document was not received by the Clerk's Office until April 2, 2014, approximately one week after Judge Hochberg issued her ruling on Petitioner's motion and approximately six months after Respondent filed its answer. (ECF No. 12).

---

[2] Based on Petitioner's criminal history and the career offender enhancement, Judge Cavanaugh found the applicable Guidelines Range to be 360 months to life based on an offense level of 37 and a criminal history category of VI. (Sentencing Transcript at 19).

## II. PETITIONER'S RULE 59(e) MOTION

### A. Legal Standard

The scope of a motion brought pursuant to Rule 59(e) is extremely limited. *See Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). Such a motion may not be used to relitigate every facet of a case, but rather may be employed "only to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* "'Accordingly, a judgment may be altered or amended [only] if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [decided the motion], or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Id.* (quoting *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.2d 237, 251 (3d Cir. 2010)). In this context, manifest injustice "generally . . . means that the Court overlooked some dispositive factual or legal matter that was presented to it," or that a "direct, obvious, and observable" error occurred. *See Brown v. Zickefoose*, Civil Action No. 11-3330, 2011 WL 5007829, at *2, n. 3 (D.N.J. 2011).

### B. Analysis

Preliminarily, Petitioner argues that this Court should reconsider the motion Judge's decision because that decision did not take into account Petitioner's traverse. A traverse or reply brief, however, is not a required pleading in the § 2255 context. *See* Rule 5(d) of the Rules Governing Section 2255 Cases; *see also Irizarry v. United States*, Civil Action No. 12-656, 2012 WL 5494806, at *3 (E.D. Pa. Nov. 13, 2012). As such, it does not amount to legal error for a

District Court to decide a § 2255 motion in the absence of a reply brief, especially where that reply is not received by the deciding court until after it makes its ruling. *Irizarry*, 2012 WL 5494806 at *3. Here, Petitioner's traverse was not received until April 2, 2014, approximately one week after Judge Hochberg decided his § 2255 motion and several months after the Government's answer. Contrary to Petitioner's supposition in his Rule 59(e) motion, there is no evidence in the record that he ever requested an extension of time within which to file a reply of any kind. (*See* ECF Docket). Although the Local Civil Rules do not set a specific timeline for the filing of a non-mandatory reply brief in § 2255 motions, *See* Local Civ. R. 81.2(d), and Judge Cavanaugh did not order that such a pleading be filed by a given date, it was entirely reasonable for the motion judge to assume that no reply was forthcoming given the nearly six month period of time which had passed between the filing of the answer and entry of this Court's opinion. It was therefore not an error of law to decide Petitioner's motion prior to receipt of a non-mandatory traverse which the motion judge had no reason to know was forthcoming and which, in any event, was not received until after the entry of judgment. The lack of consideration of the late reply is therefore not a basis for relief under Rule 59(e), and the Court will now turn to Petitioner's substantive arguments as to that motion.

Petitioner argues that he is at least entitled to an evidentiary hearing as to the issues raised in his § 2255 motion, and as such this Court should reconsider the decision denying that motion. Under § 2255, an evidentiary hearing is required on a motion to vacate "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b); *see also United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). Where the filings, record, and trial judge's personal

knowledge combine to conclusively negate the factual predicates asserted by a petitioner or indicate that the petitioner is not entitled to relief, no hearing is required. *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546 (evidentiary necessary only where a petitioner's claims are not conclusively resolved by the record).

In his motion, Petitioner argued that his trial counsel was constitutionally ineffective. In support of that assertion, Petitioner raised two claims: that counsel failed to properly advise him as to the plea agreement offered by the Government, including as to the potential for a Rule 35 sentence reduction motion in the event of his continued cooperation,[3] and that counsel was ineffective for failing to argue that the Sentencing Guidelines, including the career offender guideline, were not binding upon the sentencing judge. Ineffective assistance of counsel claims arise under the Sixth Amendment and are governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner is required to first show that "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). A petitioner must then show that counsel's deficient performance prejudiced his defense such that counsel's errors were so serious as to "deprive [the petitioner] of a fair trial . . . whose result is reliable." *Strickland*, 466

---

[3] Although Petitioner separated his plea related claims into two points in his memorandum of law, both his points one and three deal with counsel's advice in relation to the offered plea agreement, and are not truly distinct from one another. Contrary to Petitioner's assertion in his post-judgment motions, this Court's decision as to his § 2255 motion did not ignore his claim regarding counsel's advice or lack thereof as to a potential Rule 35 motion resulting from his accepting the guilty plea, but rather considered it as part of his claim that counsel failed to advise him regarding the plea agreement.

U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating counsel's conduct, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner must therefore show that his counsel's representation "fell below an objective standard of reasonableness" considering all the circumstances. *Id.* Reasonableness in this context must be determined based on the facts of Petitioner's particular case, viewed as of the time of the conduct Petitioner alleges was ineffective. *Id.* In scrutinizing counsel's conduct, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where the petitioner establishes deficient performance, he must still affirmatively demonstrate that counsel's deficiency prejudiced his defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Instead, Petitioner must show that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. "It is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied." *Saranchak v. Beard*, 616 F.3d 292, 311 (3d Cir. 2010) (quoting *Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999)). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," it is appropriate for courts to first address the prejudice prong where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315

(3d Cir. 2002).

Dealing first with Petitioner's second argument, this Court was entirely correct in determining that Petitioner could not show prejudice in relation to his claim that counsel failed to research and argue that the Sentencing Guidelines were not mandatory. At sentencing, Judge Cavanaugh clearly stated on the record that the "Sentencing Guidelines are no longer mandatory but advisory upon the Court." (Sentencing Transcript attached to ECF No. 18 at 18). Judge Cavanaugh was obviously aware that the guidelines, including the career offender guideline, were not binding upon him and that he was instead required only to sentence Petitioner within the limits of the statute after consideration of the relevant sentencing factors under § 3553(a). (*Id.* at 18-20). As such, it was neither an error of law or fact, nor a manifest injustice for this Court to deny Petitioner's motion on that ground.

As to Petitioner's argument that he was denied proper advice in regard to the offered plea agreement the matter is more complicated. Petitioner's right to effective assistance extends to the plea-bargaining context. *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014). As the Third Circuit has explained,

> [w]hen addressing a guilty plea, counsel is required to give a defendant enough information "'to make a reasonably informed decision whether to accept a plea offer.' *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, --- U.S. ---, 134 S. Ct. 1340 (2014). We have identified potential sentencing exposure as an important factor in the decision[-]making process, stating that "[k]knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43. In order to provide this necessary advice, counsel is required "to know the Guidelines and the relevant Circuit precedent. . . ." *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003).

*Id.* Even where a petitioner can show that counsel provided defective advice in rejecting a guilty plea, he must still show prejudice by showing that "but for his counsel's advice, he would have accepted the plea and that [the] plea agreement would have result in a lesser sentence." *Rickard v. United States*, Civil Action No. 10-4089, 2011 WL 3610413, at *8 (D.N.J. Aug. 16, 2011); *accord Lafler v. Cooper*, --- U.S. ---, ---, 132 S. Ct. 1376, 1384-85 (2012).

Both in his 59(e) motion and his original pleading, Petitioner asserts that counsel failed to give any meaningful advice as to the offered plea, instead giving the plea short shrift. Petitioner likewise suggests that had counsel advised him of the possibility of a Rule 35 motion for a reduced sentence based on cooperation with the Government, he would have pled guilty pursuant to the plea agreement. Respondent, however, submitted a certification by counsel that specifically denies Plaintiff's suppositions. Trial counsel specifically certifies that she fully discussed the sentencing consequences Petitioner would face under the plea agreement as opposed to the sentence he would face were he found guilty at trial, including the possibility of a Rule 35 motion, and that she advised Petitioner to accept the plea. Counsel also certified that Petitioner adamantly refused to plead guilty and insisted on proceeding to trial. As the motion judge's opinion noted, that Petitioner professed his innocence and denied his involvement in any drug activity during the suppression hearing lends credence to the supposition both that Petitioner refused to accept the plea when so advised by counsel, and that Petitioner would not have accepted the plea offer in any event, and thus would not be able to show prejudice regardless of any deficiencies in counsel's representation. Although those statements by Petitioner certainly support and are consistent with counsel's assertions in her certification, they do not in and of themselves prove that counsel's version of events, as opposed to Petitioner's, are accurate. The motion judge's decision to that

effect thus at least borders on making a credibility determination, which would suggest that the motion paperwork and record did not conclusively negate Petitioner's assertions and that an evidentiary hearing would have been prudent in this case.[4] *See Booth,* 432 F.3d at 545. While this Court is not convinced that the motion judge's denial of Petitioner's § 2255 motion on this ground was a clear error of law sufficient to require remedy under Rule 59(e), out of an abundance of caution this Court will grant Petitioner's 59(e) motion in part and hold an evidentiary hearing solely as to Petitioner's claim that counsel failed to properly advise him as to the offered plea agreement and that he would have accepted that agreement given proper advice.

In his reply brief, Petitioner raised an additional argument of ineffective assistance of counsel which had not previously been raised in his § 2255 motion or in either his Rule 59(e) or 60(b) motions: that his former counsel, Paul Bergrin, was indicted for certain crimes and that a conflict of interest which impugned Petitioner's Sixth Amendment rights therefore existed. Petitioner argues that both Bergrin's arrest on prostitution related charges and subsequent indictment for more serious crimes created conflicts of which he was never made aware. Initially, this Court notes that it need not consider a point raised only in Petitioner's reply brief. *See Thompson v. United States*, No. 12-1312, 2015 WL 1344793, at *6 n. 9 (D.N.J. March 23, 2015) (courts need not consider arguments raised for the first time in a reply brief); *Soto v. United States*, No. 04-2108, 2005 WL 3078177, at *6 (D.N.J. Nov. 16, 2005); *Rodriguez v. United States*, No. 04-158, 2005 WL 2007033, at *9 n. 7 (D.N.J. Aug. 22, 2005). Although this Court need not reach

[4] Had it been the trial judge who rendered this decision, it is possible such a judgment was the result of the trial judge's experience with Petitioner's case and recollection as to Petitioner's actions at and prior to trial. *See Nicholas*, 759 F.2d at 1075. As the motion was not decided by the trial judge, no such recollection can be said to underlay the motion judge's decision.

the issue, it is clear from the record that Petitioner's contention is without merit. Knowing that counsel had been indicted, and perhaps that Bergrin was under further investigation, the Government specifically requested that the magistrate judge hold a hearing as to the potential conflicts Bergrin's criminal charges created as soon as counsel entered her appearance on Petitioner's behalf. The magistrate judge not only ordered a hearing on that issue, but also appointed a conflicts counsel to advise Petitioner as to the issue in advance of that hearing. During the hearing, the magistrate judge discussed not only the then pending prostitution related charges in New York, but also the known likelihood that Bergrin would be subject to separate charges, including potential federal criminal charges, at a later date. (Hearing Transcript attached to ECF No. 21 at 3-4). Conflicts counsel was specifically asked both about the New York state charges, including prostitution related offenses, and the potential for further charges relating to a federal investigation then ongoing in New Jersey against Bergrin, about both of which Petitioner was already aware. (*Id.*). After an opportunity to discuss the matter with conflicts counsel, Petitioner specifically, on the record, acknowledged the potential conflict of interest and waived any argument as to that conflict. (*Id.* at 4-7). The magistrate judge thereafter specifically accepted Petitioner's waiver of the conflict of interest and permitted Petitioner to continue with Bergrin's office, through Ms. Saunders, as his trial counsel. Petitioner's claim that he was never made aware of the issue or conflict of interest is therefore directly belied by the record and is patently without merit. Petitioner's conflict argument therefore provides no basis for this Court to take any additional action with regards to the prior order denying Petitioner's § 2255 motion.

## III. PETITIONER'S RULE 60(b) MOTION

### A. Legal Standard

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005). Where the particular circumstances dealt with in subsections one through five of the rule do not apply, as here, Rule 60(b)(6) "permits reopening when the movant shows 'any . . . reason justifying relief from the operation of the judgment.'" *Id.* "The remedy provided by Rule 60(b) is extraordinary, and special circumstances must justify granting relief under it." *Jones v. Citigroup, Inc.*, Civil Action No. 14-6547, 2015 WL 3385938, at *3 (D.N.J. May 26, 2015) (quoting *Moolenaar v. Gov't of the Virgin Islands*, 822 F.3d 1342, 1346 (3d Cir. 1987). A Rule 60(b) motion "may not be used as a substitute for appeal, and that legal error, without more cannot justify granting a Rule 60(b) motion." *Holland v. Holt*, 409 F. App'x 494, 497 (3d Cir. 2010) (quoting *Smith v. Evans*, 853 F.2d 155, 158 (3d Cir. 1988)). A motion under the rule may not be granted where the moving party could have raised his legal argument by means of a direct appeal. *Id.*

### B. Analysis

Petitioner argues that he should receive relief from this Court's prior order denying his § 2255 motion pursuant to Rule 60(b). Although this Court will hold an evidentiary hearing as to one of Petitioner's claims, because this Court denies Petitioner's Rule 59(e) motion as to Petitioner's remaining habeas claim, the Court will address Petitioner's Rule 60(b) motion in so much as it applies to those claims for which this Court denied relief under Rule 59(e). As this

Court has considered his Rule 59(e) motion, however, this Court will deny that portion of Petitioner's 60(b) motion only intended to persuade this Court to rule on that motion.

Petitioner raises only a single additional argument in his 60(b) motion: that he never received a *Miller* notice and was therefore entitled to have the prior order dismissing his § 2255 motion vacated. Petitioner's argument is misguided. In *Miller*, the Third Circuit held that "upon receipt of pro se pleadings challenging an inmate's conviction or incarceration – whether styled as a § 2255 motion or not – a district court should issue a notice to the petitioner regarding the effect of his pleadings." *United States v. Miller*, 197 F.3d 644, 652 (3d Cir. 1999). The purpose of the holding of *Miller* was to ensure that pro se Petitioners did not have their post-judgment criminal motions unintentionally construed as habeas petitions and therefore potentially lose their rights to raise a single, all-inclusive habeas petition as required by AEDPA. *Id.* at 650-52. The failure to provide a *Miller* notice therefore "prevents the motion from counting as a first § 2255 motion for second or successive purposes." *Norwood v. United States*, 472 F. App'x 113, 116 (3d Cir. 2012). Thus, where a *Miller* notice is not provided, the Petitioner is not barred from bringing a second petition bringing distinct claims within the one year statute of limitations. The failure to provide a *Miller* notice does not in any way impugn the validity of the district court's determination as to the issues raised in the original petition, but rather merely prevents the AEDPA bar on second or successive petitions from applying in the event that the petitioner files a second, distinct § 2255 motion. As such, whether Petitioner received a *Miller* notice or not is immaterial to the validity of this Court's decision on his § 2255 motion. Even assuming *arguendo* that the notice provided on the form petition on which Petitioner filed his motion was not sufficient to comply with *Miller's* requirements, the *Miller* rule provides no support for the assertion that the order denying

Petitioner's motion should be vacated in its entirety.[5] *Id.* Petitioner's Rule 60(b) motion is therefore without merit and will be denied.

## IV. CONCLUSION

For the reasons stated above, Petitioner's Rule 60(b) motion is DENIED, Petitioner's Rule 59(e) motion is GRANTED IN PART and DENIED IN PART, and this Court will order an evidentiary hearing solely as to Petitioner's claim that he received ineffective assistance of counsel in relation to the Government's offer of a plea agreement. An appropriate order follows.

Hon. Jose L. Linares,
United States District Judge

[5] This Court recognizes that there exists some question as to whether the dictates of *Miller* remain good law after the Court's decision in *Pliler v. Ford*, 542 U.S. 225 (2004). *See Norwood*, 472 F. App'x at 116 n. 1. As a determination as to the legitimacy of the Third Circuit's decision in *Miller* is beyond the authority of this Court, and is in any event unnecessary to resolve Petitioner's claim, this Court expresses no opinion as to how *Pliler* affects the *Miller* rule. Likewise, because a *Miller* violation would not provide Petitioner the benefit he seeks under Rule 60(b), the Court need not and does not reach the question of whether the notice provided in the Clerk's form motion paperwork for *pro se* Petitioners comports with the requirements of *Miller*.